UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KANELLA KAREN HANTZIS,

      Plaintiff,

v.                                                              Case No. 8:13-cv-01711-T-17MAP

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**

      Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks this Court's review of the Commissioner's decision denying her claim for disability insurance benefits ("DIB"). Plaintiff argues the administrative law judge ("ALJ") erred by (1) failing to give proper weight to the opinions of her treating physicians, Drs. Brennan and Ho; (2) failing to consider the retrospective opinion of Dr. Malhotra; and (3) failing to account for the functional limitations caused by her vertigo and headaches in Plaintiff's residual functional capacity ("RFC") and in the hypothetical to the vocational expert ("VE"). After considering the parties' briefs and the administrative record in this case, I conclude that the Commissioner's decision is in accordance with the law and supported by substantial evidence. I therefore recommend the Commissioner's decision be affirmed.

      *A. Standard of Review*

      To be entitled to disability insurance benefits, a claimant must be unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423(d)(1)(A). A "physical or

mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (i.e., one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her age, education, and work experience. 20 C.F.R. § 404.1520. A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert,* 482 U.S. 137 (1987); 20 C.F.R. § 404.1520(f).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389 (1971). The ALJ's factual findings are conclusive if "substantial evidence" consisting of "relevant evidence as a reasonable person would accept as adequate to support a conclusion" exists. *See* 42 U.S.C. § 405(g); *Keeton v. Dept. of Health and Human Servs.*, 21 F.3d 1064 (11th Cir. 1994). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence

2

preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Further, the Commissioner's failure to apply the correct law or to give the reviewing court sufficient reasoning for determining that he has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066; *Jamison v. Bowen*, 814 F.2d 585 (11th Cir. 1987).

   *B. Background*

   Plaintiff was forty-three years old at the time of her administrative hearing, attended one-year of college, and has work experience as a cosmetologist and waitress (R. 39-40, 42-44). She alleges she has been unable to work since July 1, 1993, due to vertigo, bulging and degenerative discs, hip problems, muscle pain, and migraines (R. 49, 132, 153). The ALJ agreed some of Plaintiff's alleged impairments were severe. Specifically, the ALJ found at step two and three of the sequential analysis that Plaintiff suffered from severe impairments of right L5 radiculopathy with bilateral lumbar paraspinal myofascial pain syndrome, degenerative disc disease at C5-6 with resulting cervical spine pain, tibia fracture, vertigo, and migraine headaches; however, none qualified as a listed impairment in C.F.R. Part 404, Subpart P, Appendix 1 (R. 21-22). At step four, the ALJ concluded that Plaintiff retained the RFC to perform the full range of light work (R. 22). With that RFC, the ALJ, aided by the testimony of a vocational expert, found Plaintiff was not prevented from performing her past relevant work as a cosmetologist and waitress and, in the alternative, was capable of performing other work in the national economy (R. 26-27). Consequently, the ALJ concluded that Plaintiff was not disabled (R. 28). Plaintiff, having exhausted her administrative remedies, filed this action.

   *C. Discussion*

   In this appeal, Plaintiff raises three issues: 1) whether the ALJ failed to give proper weight

to the opinions of Plaintiff's treating physicians, Drs. Brennan and Ho; 2) whether the ALJ's failure to assess the retrospective opinion of Dr. Malhotra warrants remand; and 3) whether the ALJ erred by failing to account for the functional limitations caused by her vertigo and headaches in Plaintiff's RFC and in the hypothetical to the VE.  I discuss each of these arguments below and conclude that the ALJ's decision is supported by substantial evidence.

*1. treating physicians' opinions*

The first issue Plaintiff raises is whether the ALJ erred by failing to apply the correct legal standards when evaluating the opinions of Plaintiff's treating physicians, Drs. Brennan and Ho.  In support, Plaintiff maintains the ALJ's reasons for rejecting Dr. Brennan's and Dr. Ho's opinions are not based on the correct legal standard.  Plaintiff contends the ALJ's statement that Plaintiff's treating physicians' opinions were "inconsistent with the evidence of record when considered in its entirety" was conclusory and insufficient to establish that the ALJ's decision was supported by substantial evidence.  Instead, Plaintiff asserts the ALJ should have afforded Dr. Brennan's and Dr. Ho's opinions substantial weight.  In rebuttal, the Commissioner argues the ALJ had good cause to discount Dr. Brennan's and Dr. Ho's opinions as to Plaintiff's ability to sit, stand, bend, and twist.

The testimony or opinion of a treating physician must be given substantial or considerable weight unless there is "good cause" not to.  *Lewis v. Callaghan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  "Good cause" exists where (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with his own medical records.  *Id.*  Conclusory statements such as stating an "opinion is inconsistent with or not bolstered by the medical record are insufficient to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for

4

such a conclusion." *Reynolds v. Comm'r of Soc. Sec.*, 6:10-CV-1682-ORL-GJK, 2012 WL 682462, at *12 (M.D. Fla. Mar. 2, 2012)*; see also Poplardo v. Astrue,* 2008 WL 68593, at *11 (M.D. Fla. Jan.4, 2008) (remanding when ALJ failed to specifically articulate evidence contrary to treating doctor's opinion). Finally, an ALJ must state with particularity the weight given to the treating physicians' opinions and failure to do so constitutes reversible error. *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011).

### *i. Dr. Brennan*

Dr. Brennan has treated Plaintiff since 1994 for her various complaints of low back pain (R. 459). Dr. Brennan diagnosed Plaintiff with right L5 radiculopathy (R. 450). As treatment, Dr. Brennan suggested Plaintiff undergo aggressive physical therapy and medications (R. 435, 446-47). He also restricted Plaintiff to lifting no greater than 20 pounds, with no frequent bending or twisting at the waist, and that Plaintiff be allowed short rest periods of less than one minute to perform exercises when her symptoms significantly increase (R. 435). On multiple occasions, Dr. Brennan requested Plaintiff refrain from work (R.442, 444, 446, 450). Interestingly, Dr. Brennan noted that Plaintiff's nerve conduction study showed no evidence of myopathy, neuropathy, or radiculopathy, and all was essentially normal, except that clinically, Plaintiff displayed a right L5 radiculopathy (R. 459). And at most visits, Plaintiff displayed moderate tenderness over the right lumbar paraspinals, forward flexion ranged from one to three feet from the floor, and she had normal strength in all lower extremities (R. 426-27, 430-32, 434, 436, 439, 441-42, 450). She also, at times, mentioned to Dr. Brennan that she had a gradual decrease in pain, increased endurance, increased range of motion, a slight decrement to her pain symptomatology, and that her headaches were gradually decreasing (R. 430-31, 441, 446-47).

*ii. Dr. Ho*

Dr. Ho appears to have begun treating Plaintiff around the same time as Dr. Brennan. Dr. Ho noted that Plaintiff had weakness in her right extensor hallucis and ankle dosiflexor, grade 4/5, and paravertebral muscle spasms were noted (R. 390). Dr. Ho did not find any evidence of atrophy or fascilations, but he did find a restricted range of motion in Plaintiff's lumbar spine (*Id.*). Thus, he restricted Plaintiff in bending, lifting, and twisting (*Id.*). He also stated that Plaintiff would be unable to work given her current symptomology (R. 391). In other notes, Dr. Ho opined that as to Plaintiff's motor function, she had symmetrical size and strength bilaterally with no evidence of facilations, spasms, or restriction of movement, her straight-leg test while positive on the right was negative on the left, there was no paravertebral spasm, scoliosis, or any other deformity of the lower back (R. 393), and she was limited in activity because of pain (R. 394).

*iii. ALJ's evaluation of Dr. Brennan's and Dr. Ho's opinions*

The ALJ discussed the medical opinions of Drs. Brennan and Ho. And, when weighing their opinions, the ALJ stated he did not give them controlling weight (R. 25). He did, however, give significant weight to Dr. Brennan's weight lifting restriction, which Dr. Brennan specifically limited to 20 pounds. He thoroughly discussed both physicians' treatment histories with the Plaintiff; however, he concluded that the physicians' opinions as to the restrictions on Plaintiff's ability to sit, stand, bend, and twist were not supported by the doctors' internal notes whereby improvement was documented in the Plaintiff's condition with continued conservative management. He also found them inconsistent with the evidence of record when considered in its entirety (R. 25-26). Consequently, the ALJ did not include those restrictions in Plaintiff's RFC.

In doing so, the ALJ pointed out inconsistencies in the treatment records of Drs. Brennan and Ho with the other evidence in the record. For instance, the ALJ noted that Dr. Brennan's physical exams revealed only moderate amount of right lumbar paraspinal splitting and tenderness to palpation, with moderate tenderness to palpation to the right l sacroiliac (SI) joint and sciatic notch (R. 24). The ALJ also noted that Plaintiff's physical therapy reports confirmed that Plaintiff had objective improvement and that Plaintiff had reported some subjective improvement as well (*Id.*) These reports included results stating that Plaintiff had marked increased lumbar mobility, increased exercise and activity level, decreased pain at the lumbar spine and increased general body flexibility; and other than a new complaint of Plaintiff's knee giving out, Plaintiff was described as doing well. In addition, to the therapy records, the ALJ pointed out, Plaintiff's extensive diagnostic tests, which included CT scans, bone scans and sedimentation rate results, electromyographys, and x-rays, revealed mostly negative findings and normal results (*Id.*). Finally, the ALJ noted that Plaintiff continued to work after her fall, albeit at reduced hours, and that Dr. Brennan had reported Plaintiff had fair relief of her symptomology with both over-the-counter extra strength Tylenol and other prescriptions (*Id.*). Accordingly, despite Plaintiff's urging of the contrary, the ALJ articulated many reasons for affording the opinions of Drs. Brennan and Ho little weight as to the restrictions on Plaintiff's ability to sit, stand, bend, and twist and the ALJ's conclusions are supported by substantial evidence.

For example, in addition to the ALJ's findings, the Court's independent review of the record reveals that in almost of all of Dr. Brennan's exam notes, Plaintiff was noted as having normal strength throughout her lower extremities despite her complaints of pain, and Plaintiff was able to bend, often, as close as one to two feet from the floor (R. 299, 426, 430, 432, 436, 439). And as

pointed out by the Commissioner, the ALJ's restriction of Plaintiff to light work adequately accounts for Dr. Brennan's lifting restriction of 20 pounds.[1]  Another of Dr. Brennan's treatment notes revealed that Plaintiff's forward, backward, and side bending in both directions was within normal limits, her abdominal strength was 4/5, and she had improved straight-leg testing despite no significant improvement in function (R. 522).  X-rays of Plaintiff's lumbar spine were also negative, and she had normal pelvis and right hip examination results (R. 343, 397).  Records from Bon Securs Hospital in 1997 stated that Plaintiff's back and extremities were without tenderness, she had 5/5 motor strength with no motor or extremity weakness, normal gait, and an otherwise unremarkable exam (R. 402-404). These inconsistencies along with those found by the ALJ, support the ALJ's conclusion that the medical record does not support Dr. Brennan's and Ho's findings.  Thus, the Court finds the ALJ had good cause to discredit their opinions.

### 2. *retrospective opinion*

Plaintiff next contends the ALJ erred by failing to assess the retrospective opinion of Plaintiff's treating physician, Dr. Malhotra.  The Commissioner, while agreeing that the ALJ failed to mention Dr. Malhotra's opinion, argues that Plaintiff was not prejudiced because the ALJ's and Dr. Malhotra's opinions do not conflict.  Therefore, the Commissioner maintains that any error by

---

[1] 20 C.F.R. § 404.1567(b) defines "light work" as:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

the ALJ was harmless.

"A physician's retrospective diagnosis is a medical opinion of the claimant's impairments which relates back to the covered period." *Garvey v. Astrue,* No. 1:07-cv-00021-MP-WCS, 2007 WL 4403525 *7(N.D. Fla. Dec. 12, 2007) (citing *Estok v. Apfel,* 152 F.3d 636, 639 (7th Cir.1998) (citations omitted)). "A retrospective diagnosis may be considered only if it is corroborated by evidence contemporaneous with the eligible period. This, it would seem, is simply another way of saying that the opinion need not be given considerable weight if the opinion is inconsistent with or not supported by the contemporaneous medical records." *Garvey,* 2007 WL 4403525 at *7. If the retrospective opinion is that of a treating physician, the ALJ must articulate substantial evidence in the record to discount the opinion. *Id.* There are times, however, when the ALJ's failure to strictly comply with this requirement is considered harmless error. *Caldwell v. Barnhart*, F. App'x 188, 190 (11th Cir. 2008) ("An ALJ's failure to state with particularity the weight given different medical opinions is reversible error. When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.") (citations omitted).

Dr. Malhotra began treating Plaintiff in 2009, ten years after Plaintiff's date of last insured. In a letter dated July 24, 2009, Dr. Malhotra opined that Plaintiff "has been suffering from several health conditions that [] disabled her from doing any type of work and this includes normal routine at home. The medical conditions are as follows, chronic back pain with neurological deficiencies on her legs more prominent on the right, back spasms, ambulatory problems, and chronic pain in both legs, all of which started in 1989." (R. 257).

It is unclear whether the ALJ considered Dr. Malhotra's opinion as his findings of fact do not specifically refer to the doctor. Nonetheless, I find the ALJ's failure to mention Dr. Malhotra's

opinion harmless error. Other than opining that Plaintiff's conditions disabled her from working for many years, a decision ultimately reserved to the Commissioner,[2] Dr. Malhotra offers no opinion as to what functional limitations, if any, were caused by Plaintiff's injuries or which years he references that Plaintiff was unable to work (R. 257). He merely recites Plaintiff's medical history and indicates that Plaintiff's conditions may be worsening (*Id.*). In addition, the Court determined above that the ALJ properly rejected similar opinions of Plaintiff's treating physicians that Plaintiff was unable to work during the relevant time period. Based on the foregoing, the Court finds the ALJ's failure to mention Dr. Malhotra's report was harmless error. *See Shaw v. Astrue*, 392 F. App'x 684, 686-87 (11th Cir. 2010); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005)(finding the ALJ's failure to assign weight to certain treating physicians' opinions harmless error because while the physicians had opined that plaintiff suffered from chronic pain, none indicated that Plaintiff was unable to perform sedentary work as a result of that pain).

### 3. vertigo and migraine headaches

The last issue Plaintiff raises is whether the ALJ erred by failing to account for the functional limitations caused by her vertigo and headaches in Plaintiff's RFC and in the hypothetical to the VE. In response, the Commissioner argues that substantial evidence supports the ALJ's RFC finding as to Plaintiff's vertigo and headaches because the ALJ properly discredited Plaintiff's subjective complaints as to the limitations. As such, the Commissioner maintains that the ALJ was not required to present any limitations caused by Plaintiff's vertigo and headaches to the VE.

---

[2] The ALJ is ultimately responsible for determining whether Plaintiff meets the statutory definition of a disability. "A statement by a medical source that [the Plaintiff is] 'disabled' or 'unable to work' does not mean that the [ALJ] will determine [the Plaintiff] is disabled." C.F.R. § 1527(d)(1).

When assessing a person's RFC, the ALJ must consider all impairments and the extent to which the impairments are consistent with medical evidence. *See* 20 C.F.R. § 404.1545. The ALJ must also consider any medical opinions given by physicians, psychologists or other acceptable medical sources, which indicate the nature of a person's impairments. *Id*. The RFC determination is ultimately a decision reserved for the ALJ. 20 C.F.R. § 404.1546(c).

The ALJ thoroughly discussed and evaluated the medical evidence as well as Plaintiff's subjective complaints of the limitations caused by her vertigo and headaches. When considering Plaintiff's vertigo and headaches, the ALJ stated that while "the medical records reveal evidence of an impairment, which could reasonably be expected to result in some limitation. [] [T]he record fails to reveal evidence of medically documented objective findings consistent with the alleged severity of her symptoms and limitations." (R. 25). The ALJ discussed Plaintiff's evaluation of headaches at Beaumont Hospital where she was diagnosed with a frontal headache and prescribed an analgesia (*Id.*). He noted that a CT scan of Plaintiff's head was normal and that Dr. Ho had opined that Plaintiff's headaches were more than likely stress related (*Id.*). He also noted an emergency room record where Plaintiff had complained of headaches and vertigo (*Id.*). At that examination, the Plaintiff was found to have made contradictory statements about her medical history and her examination was essentially unremarkable (*Id.*). The ALJ noted that Plaintiff's electrocardiogram results were normal, a CT scan of Plaintiff's head was normal, and there was no evidence of any other abnormality by examination (*Id.*). Subsequently, Plaintiff was referred to a neurologist, Dr. Policherla, who opined that Plaintiff was most likely suffering from vascular complicated migraines (*Id.*). Dr. Policherla, however, did not opine that these migraines caused any functional limitations (R. 253-254). And upon further review of the record, the Court cannot locate any evidence

11

supporting Plaintiff's claims that her vertigo and headaches caused any functional limitations that conflicted with the ALJ's RFC.  For instance, in addition to the medical evidence noted by the ALJ, in 1995, Plaintiff was seen for headaches by Dr. Schlaff.  Dr. Schlaff noted that while Plaintiff's left eyelid drooped slightly, Plaintiff denied any neck stiffness or gait disturbance, her cranial nerves were normal, she could close her eyes normally, she had normal sensation on both sides of her face, and she had a normal steady gait (R. 382-83).  She diagnosed Plaintiff with a frontal headache, the etiology of which she found obscure at the time (R. 383).  A CT of Plaintiff's head revealed normal results (R. 386).  Accordingly, I find the ALJ properly found that Plaintiff's vertigo and headaches did not cause any functional limitations and the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence.

In a related argument, Plaintiff asserts that the ALJ erred by relying on the VE's testimony because the ALJ did not include Plaintiff's functional limitations related to Plaintiff's vertigo and headaches in the hypothetical to the VE.  The ALJ's hypothetical posed to a VE must comprehensively describe the plaintiff's limitations.  *Wind v. Barnhart,* 133 F. App'x 684, 693-94 (11th Cir. 2005); *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985).  If it does not fully assume all of a claimant's limitations, "the decision of the ALJ, based significantly on the expert testimony, . . . [is] unsupported by substantial evidence."  *Pendley*, 767 F.2d at 1562 (citation and quotations omitted).  Of course, the ALJ is not required to include limitations found not credible, and submits to the expert only those supported by objective evidence of record.  *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996); *McSwain v. Bowen*, 814 F.2d 617, 620 n.1 (11th Cir. 1987).

As discussed above, the ALJ properly found that the evidence did not support Plaintiff's

complaints related to the severity of her symptoms and limitations caused by her headaches and vertigo. Accordingly, the ALJ was not required to include her alleged functional limitations in his hypothetical to the VE. *See id.* Furthermore, whether or not the ALJ posed a comprehensive question to the vocational expert is irrelevant as the ALJ found at step four that Plaintiff could perform her past relevant work. *See Hennes v. Comm'r of Soc. Sec. Admin.*, 130 F. App'x 343, 346 (11th Cir. 2005) ("VE testimony is not required in determining whether a claimant can perform her past relevant work") (internal citations omitted); *Terwillger v. Colvin*, No. 1:12-cv-00129-MP-GRJ, 2013 WL 2251563, at *11 (N.D. Fla. May 21, 2013)(finding that "the VE's testimony was not necessary at step four."). Nonetheless, to the extent the ALJ relied on the VE's testimony at step four, the ALJ's hypothetical was not improper as it included all limitations the ALJ found credible.

*D. Conclusion*

For the foregoing reasons, it is hereby

RECOMMENDED:

1. That the Plaintiff's complaint be dismissed and the Commissioner's decision be affirmed.

2. That the Clerk is directed to enter judgment for the Commissioner.

IT IS SO ORDERED in Tampa, Florida on May 23, 2014.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

13

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).