UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KANELLA KAREN HANTZIS,

       Plaintiff,

v.                        CASE NO.  8:13-CV-1711-T-17MAP

CAROLYN W. COLVIN,
ACTING COMMISSIONER
OF SOCIAL SECURITY,

       Defendant.

_____/


ORDER

This cause is before the Court on:


Dkt. 21   Report and Recommendation
Dkt. 22   Objections
Dkt. 23   Response to Objections

     In the Complaint, Plaintiff Kanella Karen Hantzis seeks review of the decision of
Defendant Commissioner of Social Security denying Plaintiff's claim for disability
insurance benefits, pursuant to 42 U.S.C. Sec. 405(g).  The assigned Magistrate Judge
has entered a Report and Recommendation (Dkt. 21), in which it is recommended that
the decision of the Commissioner be affirmed.

     The alleged onset date of Plaintiff's disability is July 1, 1993, and the date of last
insurability is December 31, 1998.

     The Court has independently reviewed the pleadings and the record.  Plaintiff
Hantzis has filed objections to the Report and Recommendation, and Defendant
Commissioner of Social Security has responded to Plaintiff's objections.

Case No. 8:13-CV-1711-T-17MAP

I. Standard of Review

A. Report and Recommendation

The District Court reviews de novo the portions of the Report and Recommendation or specified proposed findings to which an objection is made. The District Court may accept, reject, or modify in whole or in part the report and recommendation of a magistrate judge, or may receive further evidence, or may recommit the matter to the Magistrate Judge with instructions.

B. Social Security Claim

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining: (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. Richardson v. Perales, 402 U.S. 389, 390, 401 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. See Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). However, this limited scope does not render affirmance automatic, for "despite [this] deferential standard for review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of the decision reached." Bridges v. Bowen, 815 F.2d 622 (11th Cir. 1987); Lamb, 847 F.2d at 701. Moreover, failure to apply the correct legal standards is grounds for reversal. Bowen v. Heckler, 748 F.2d 629, 634 (11th Cir. 1984).

With respect to the sequential analysis, the burden rests with the claimant through the first four steps of the analysis, and shifts to the Commissioner at step five. See Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007).

Case No. 8:13-CV-1711-T-17MAP

## II. Discussion

Plaintiff objects to the Report and Recommendation as follows:

1.  The ALJ did not apply correct legal standards to the opinions of Plaintiff's treating physicians, Dr. Brennan and Dr. Ho;

2.  The ALJ did not consider the retrospective opinion of Plaintiff's treating physician, Dr. Malhotra;

3.  The ALJ did not account for Plaintiff's functional limitations resulting from her vertigo and migraine headaches in the residual functional capacity assessment and hypothetical questions to the vocational expert.

## A. Weight Accorded to Opinions of Treating Physicians Brennan and Ho

Plaintiff objects that the assigned Magistrate Judge improperly reweighed the evidence, and relies on inconsistencies he found to support the conclusion of the ALJ. Plaintiff contends that the opinions of Plaintiff's treating physicians should have been accorded substantial weight, the ALJ did not apply correct legal standards to those opinions, and made findings not supported by substantial evidence.  Plaintiff argues that the ALJ ignored the fact that Dr. Brennan kept Plaintiff Hantzis in a no-work status from September, 1994 through August, 1995, and that Dr. Brennan recommended "an aggressive physical therapy program," as conservative care had not proven helpful in alleviating Plaintiff's symptomology.  Plaintiff points out that, at Plaintiff's physical therapy discharge on October 21, 1997,  Dr. Brennan notes that Plaintiff Hantzis made some progress in terms of improved flexibility and range of motion but there was no significant improvement in terms of "decreased or centralized subjective complaints or improved function." (Dkt. 14-14, p. 5).  Plaintiff further argues that Dr. Brennan's opinion is consistent with Dr. Ho's opinion.

3

Case No. 8:13-CV-1711-T-17MAP

The Government responds that the assigned Magistrate Judge did not alter any of the ALJ's findings in the Report and Recommendation, and the assigned Magistrate Judge did not rely on improper post hoc rationalization.  The Government argues that the Court should affirm the Commissioner's decision, reviewing the entire record to determine whether the Commissioner's decision was supported by substantial evidence.

In the Report and Recommendation, the assigned Magistrate Judge summarizes the course of Plaintiff's treatment with Dr. Brennan and Dr. Ho, and the ALJ's evaluation of the medical opinions of Dr. Brennan and Dr. Ho as to Plaintiff's functional losses, including inconsistencies between the opinions and the doctors' own records, and between the opinions and other evidence in the record.  The "other evidence" includes evidence that Plaintiff had subjective and objective improvement with physical therapy, that extensive diagnostic tests revealed mostly negative findings and normal results,  that Plaintiff continued to work after her fall, although with reduced hours, and Plaintiff had fair relief of her symptoms with over-the-counter medicine and prescription medicine.  The assigned Magistrate Judge notes other inconsistencies, such as findings that Plaintiff had normal strength in her lower extremities, that Plaintiff was able to bend as close as one or two feet from the floor, that Plaintiff's forward, backward and side bending was within normal limits, and that upon examination at Bon Secours Hospital in 1997 Plaintiff's back and extremities were without tenderness, Plaintiff had 5/5 motor strength, and normal gait.  The assigned Magistrate Judge found that the ALJ had good cause to discredit the opinions of Dr. Brennan and Dr. Ho.

The Court notes that, at Step Two, the ALJ determined that Plaintiff Hantzis had the following severe impairments: 1) right L5 radiculopathy with bilateral lumbar paraspinal myofascial pain syndrome; 2) degenerative disc disease at C5-6 with resulting cervical spine pain; 3) tibia fracture; 4) vertigo and 5) migraine headaches.  At Step Three, the ALJ determined that, through the date last insured, Plaintiff did not

4

Case No. 8:13-CV-1711-T-17MAP

have an impairment or combination of impairments that met or medically equaled one of the listing impairments in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ then determined Plaintiff's residual functional capacity ("RFC"). After consideration of the entire record, the ALJ found that Plaintiff Hantzis had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b). The ALJ considered all symptoms, and the extent to which Plaintiff's symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on 20 CFR 404.1529 and SSRS 96-4p and 96-7p. The ALJ also considered opinion evidence in accordance with 20 CFR 404.1527, and SSRs 96-2p, 96-5p, 96-6p and 06-3p. At Step Four, the ALJ determined that Plaintiff has the residual functional capacity to perform the requirements of her past relevant work.

The Court notes that, according to Dr. Brennan's record of September 27,1994, Plaintiff had not worked for a year prior to Dr. Brennan's evaluation, and Dr. Brennan suggested that Plaintiff refrain from work until further evaluation after termination of the therapy program Dr. Brennan prescribed. (Dkt. 14-12, p. 30). Dr. Brennan continued to suggest that Plaintiff refrain from work until termination of Plaintiff's therapy program. By January 11, 1995, based on a myelogram, it was determined that Plaintiff was not a surgical candidate. (Dkt. 14-12, pp. 26-27). In general, conservative treatment for back pain includes any treatment option that does not involve surgery. Dr. Brennan consistently recommended conservative treatment, including exercise, weight loss and pain management for Plaintiff's symptoms. When Dr. Brennan's recommended an aggressive physical therapy program, the recommendation remained a recommendation for conservative treatment, albeit at a more intense level. A course of conservative treatment may be used to discount a doctor's assessment of a plaintiff as disabled. Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996).

On August 16, 1995, Dr. Brennan opined that Plaintiff could use the services of a rehab counselor, and imposed work restrictions of no lifting greater than 20 lbs., no

Case No. 8:13-CV-1711-T-17MAP

frequent bending and twisting at the back, and one minute rest periods to perform exercises when symptoms increase.  On October 21, 1997, at the conclusion of a physical therapy program, Dr. Brennan opined that there was no significant improvement in Plaintiff's subjective complaints or improved function.  (Dkt. 14-14, pp. 4-5).

At Step Two of the analytical process, Plaintiff has the mild burden of showing that Plaintiff has an impairment which has more than a minimal impact on Plaintiff's ability to perform basic work activities.  See Flynn v. Heckler, 768 F.2d 1273 (11th Cir. 1985)(citing 20 C.F.R. Sec. 404.1521 and Brady v. Heckler, 724 F.2d 914 (11th Cir. 1984)).  As noted above, the ALJ identified Plaintiff's impairments which the ALJ determined to be severe.  Plaintiff's RFC is the most that  Plaintiff can do despite Plaintiff's severe impairments, which is assessed based on all relevant evidence in the record.  At Step Four, Plaintiff has the burden of showing Plaintiff cannot perform work within the RFC.

In this case, in determining Plaintiff's RFC,  the ALJ considered Plaintiff's self-reported symptoms, applying the two-step "pain standard," first determining whether there was an underlying medically determinable physical or mental impairment that could reasonably be expected to produce Plaintiff's pain or other symptoms, and then making a finding as to the credibility of Plaintiff's assertions as to the limiting effects of pain or other symptoms, based on consideration of the entire record.  The ALJ noted Plaintiff's testimony as to the severity of Plaintiff's back pain, neck pain, numbness and tingling her arms, severe dizziness and spinning, constant nausea, severe migraines, depression, and difficulty in concentrating and focusing.  The ALJ further noted Plaintiff's testimony regarding Plaintiff's functional limitations and activities of daily living.  (Dkt. 14-2, pp. 23-24).

Case No. 8:13-CV-1711-T-17MAP

    The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with the ALJ's functional capacity assessment that Plaintiff can perform the full range of light work.

    In evaluating Plaintiff's alleged low back pain, the ALJ considered Plaintiff's treatment from November, 1989 through June, 1997.  The ALJ noted Plaintiff's improvement after physical therapy, that many of the diagnostic tests had normal results, that Plaintiff returned to work with reduced hours after the falls in 1989,  and that Plaintiff obtained some relief from her symptoms with over-the-counter and prescription medications.

    In reaching his conclusion as to Plaintiff's residual functional capacity to perform a full range of light work, the ALJ reduced Plaintiff's residual functional capacity based on the fact that Plaintiff has residual complaints and symptoms which make it difficult for Plaintiff to perform certain exertional activities.  After considering the objective and subjective evidence, the ALJ reduced Plaintiff's residual functional capacity to accommodate  Plaintiff's impairments and associated symptoms that were medically determined.

    In accordance with SSR 96-2p, the ALJ considered but did not give controlling weight to the opinions of Drs. Brennan and Ho.  A treating physician's opinion will be granted controlling weight if it is consistent with other medical evidence and is well-supported by acceptable clinical and diagnostic techniques.   20 C.F.R. § 404.1527(d)(2).   Where some medical evidence is found to be inconsistent with the treating physician's opinion, the ALJ should give that opinion "substantial or considerable" weight unless "good cause" is shown to the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1140 (11th Cir. 1997).  The Eleventh Circuit has found "good cause" to

7

Case No. 8:13-CV-1711-T-17MAP

exist where: (1) the opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the opinion was conclusory or inconsistent with the doctor's own medical records. Wright v. Barnhart, 153 Fed. Appx. 678, 684 (11th Cir. 2005).  If the ALJ grants less than substantial or considerable weight to a treating physician, the ALJ must clearly articulate the reasons for doing so. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

In this case, the ALJ gave significant weight to the lifting restriction of Dr. Brennan, specifically limited to 20 pounds at one point, and has factored this into the RFC.  The ALJ accorded little weight to the opinions of Drs. Brennan and Ho as they pertained to restrictions on Plaintiff's ability to sit, stand, bend and twist.  In determining the amount of weight to accord the opinions, the ALJ considered the examining relationship, the treating relationship, supportability, consistency and specialization. The ALJ found the opinions were not supported by the doctors' own internal notes, whereby improvement was documented in Plaintiff's condition with continued conservative management.  The ALJ found the limitations were inconsistent with the record when considered in its entirety.  The ALJ further noted that the ultimate issue of disability is a finding of fact reserved to the Commissioner.

The assigned Magistrate Judge found that the ALJ articulated his reasons for affording the opinions of Dr. Brennan and Dr. Ho little weight, and that the ALJ's conclusions are supported by substantial evidence.  The assigned Magistrate Judge further found that the inconsistencies identified by the ALJ, along with other inconsistencies, show that the medical record does not support the opinions of Dr. Brennan and Dr. Ho as to Plaintiff's functional loss, and that the ALJ had good cause to discredit their opinions.

In this case, the ALJ  identified the specific inconsistencies which underlie the ALJ's determination of Plaintiff's RFC.  The ALJ made an explicit finding as to Plaintiff's

8

Case No. 8:13-CV-1711-T-17MAP

credibility.  The ALJ considered Plaintiff's testimony about pain and other non-exertional limitations and linked his conclusion to substantial evidence.  It is the role of the ALJ to resolve conflicts in the evidence.   The Court finds that substantial evidence supports the findings of the Commissioner.   After consideration, the Court overrules Plaintiff's Objection as to this issue.

B.  Weight Accorded to Retrospective Opinion of Dr. Malhotra

        Plaintiff Hantzis was treated by Guarav Malhotra, M.D. in June and July, 2009, ten years, more or less, after the date of last insurability, December 31, 1998.   During that time, tests were conducted at Brooksville Regional Hospital.  On July 24, 2009, Dr. Malhotra provided a report dated July 24, 2009, which includes a summary of Plaintiff's health conditions since 1989.   Dr. Malhotra states:

> I have been recently treating her and she has started developing more conditions which are severe pain under both feet, the vertigo has worsened and the patient developed chronic neck pain from degenerative disc disease in C5-C6.  The above mentioned conditions starting in 1989 are still present and with the new developed conditions are causing the patient to be out of work for many years.

(Dkt. 14-7, p 15).  The ALJ did not mention the opinion of Dr. Malhotra in his decision. In the Report and Recommendation, the assigned Magistrate Judge found that the ALJ's failure to mention Dr. Malhotra's opinion was harmless error:

> "Other than opining that Plaintiff's conditions disabled her from working for many years, a decision ultimately reserved to the Commissioner, Dr. Malhotra offers no opinion as to what functional limitations, if any, were caused by Plaintiff's injuries or which years he references that Plaintiff was unable to work."

(Dkt. 21, p. 10).

        In the Objection, Plaintiff argues that 20 C.F.R. Sec. 404.1512(e)(1)(2010) and

9

Case No. 8:13-CV-1711-T-17MAP

SSR 96-5p require the ALJ to recontact the medical source when the report from a medical source contains a conflict or ambiguity, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory techniques.  Plaintiff argues that the ALJ's failure to state with particularity the weight given to Dr. Malhotra's opinion was not harmless error, as Dr. Malhotra was the third treating physician to render an opinion that supported a finding of disability.  Plaintiff requests that this case be remanded for further proceedings.

The Government responds that new regulations went into effect on March 26, 2012; under the new regulations, recontacting a treating source is not required, but is a matter within the ALJ's discretion.  The Government further argues that the change is in a procedural rule, not substantive law, and the new regulations will apply on remand.  See Landgraf v. USI Film Prods., 511 U.S. 244, 275 (1994)(changes in procedural rules usually applied to matters arising before the enactment of changes without raising concerns about retroactivity).  The Government argues that, where the ALJ will not be required to recontact Plaintiff's treating physician upon remand, a remand based on the application of the old regulations would be a useless formality, and the Court should affirm the Commissioner's final decision.

A physician's retrospective diagnosis is a medical opinion of a claimant's impairments that relates back to the covered period.  Mason v. Commissioner of Social Security, 430 Fed. Appx. 830, 834 (11th Cir. 2011)(citing Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998); Garvey v. Astrue, 2007 WL 4403525 *7 (N.D. Fla. Dec. 12, 2007)(citing Estok v Apfel, 152 F.3d 636, 639 (7th Cir. 1998)).  A retrospective diagnosis may be considered only if it is corroborated by evidence contemporaneous with the eligible period.  Estok, at 640 (citations omitted).

Dr. Ho and Dr. Brennan treated Plaintiff for low back pain from 1992 through 1997.  Dr. Ho and Dr. Brennan opined that Plaintiff has functional limitations due to

Case No. 8:13-CV-1711-T-17MAP

Plaintiff's chronic low back pain.  In July, 2009, Dr. Malhotra noted the following conditions which started in 1989: chronic back pain, back spasms, ambulatory problems, chronic pain in both legs.  (Dkt. 14-8, p. 2).  Dr. Malhotra treated Plaintiff in June and July 2009 for newly developed problems of severe pain in both feet, worsening vertigo and chronic neck pain from degenerative disc disease at C5-C6.   Dr. Malhotra opined that "the chronic conditions present since 1989 and the newly developed problems are causing Plaintiff to be out of work for many years." (Dkt. 14-8, p. 2).

The Court notes the opinions of Dr. Ho and Dr. Brennan are consistent with each other.  Dr. Malhotra's opinion is consistent with those opinions to the extent that, based on the continuing presence of the chronic conditions since 1989, Dr. Malhotra opines that Plaintiff's health conditions impair Plaintiff's ability to work.  The Court has already found that the ALJ had good cause to discount the opinions of Dr. Ho and Dr. Brennan, based on inconsistencies between the opinions and  the doctors' own records, and the record when considered in its entirety, such that the ALJ properly rejected the opinions of Plaintiff's treating physicians as to some of the restrictions imposed, and as to the opinion that Plaintiff was unable to work during the relevant time period.  To the extent that Dr. Malhotra's opinion looks back to the time when Dr. Ho and Dr. Brennan treated Plaintiff,  good cause exists to discount the opinion of Dr. Malhotra, since it is not supported by evidence within the relevant time period.   The Court also notes that Dr. Malhotra did not express an opinion as to Plaintiff's functional loss at a past specific point in time.  To the extent that Dr. Malhotra opined that Plaintiff's conditions disabled her from working for many years, that opinion is not a medical opinion, but is a finding of fact reserved to the Commissioner.  "A statement by a medical source that [Plaintiff] is 'disabled' or 'unable to work' does not mean that the [ALJ] will determine [Plaintiff] is disabled." See 20 C.F.R. Sec. 404.1527(d); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

11

Case No. 8:13-CV-1711-T-17MAP

An ALJ's failure to strictly comply with the requirement to articulate substantial evidence in the record to discount the opinion of a treating physician may be considered harmless error.  "When an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand."  Caldwell v. Barnhart, 261 Fed. Appx. 188, 190 (11th Cir. 2008)(citations omitted).

In evaluating the necessity of a remand, the Court considers whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.  Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995).   The likelihood of unfair prejudice may arise if there is an evidentiary gap that the claimant contends supports her allegations of disability. Id. at 936.

Dr. Malhotra's opinion was intended to support Plaintiff's claim that Plaintiff suffered from severe chronic low back pain that continued throughout the period of insurability to 2009.  The Court has determined that there was good cause to discount the weight accorded to the opinions of Dr. Brennan and Dr. Ho, and the ALJ determined that Plaintiff's claim of continuous pain and other non-exertional impairments was not entirely credible.  In this case, there is no evidentiary gap to be filled by Dr. Malhotra's opinion; the omission of any evaluation of Dr. Malhotra's opinion did not prejudice Plaintiff.   The Court finds that the omission of Dr. Malhotra's from the decision of the ALJ is harmless error, and overrules Plaintiff's objection as to this issue.

C. Functional Limitations of Vertigo and Headaches in RFC and
   Hypothetical Posed to VE

1. RFC

At Step Two, the ALJ included vertigo and headaches in the impairments he determined to be severe.  In determining Plaintiff's RFC, after considering Plaintiff's

12

Case No. 8:13-CV-1711-T-17MAP

testimony as to Plaintiff's functional limitations and activities of daily living, and after considering the opinion evidence, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent that Plaintiff's statements were inconsistent with the ALJ's residual functional capacity assessment that Plaintiff has the residual functional capacity to perform a full range of light work.  The ALJ further noted Plaintiff's low back pain improved with physical therapy, that the results of various diagnostic tests were normal, and that prescription medicine was prescribed which afforded Plaintiff fair relief.

As to vertigo and migraine headaches, the ALJ states:

> In terms of the claimant alleged vertigo and migraine headaches, the medical records reveal evidence of an impairment which would reasonably be expected to result in some limitation.  However, the record fails to reveal evidence of medically documented objective findings consistent with the alleged severity of [Plaintiff's] symptoms and limitations.

The ALJ considered Plaintiff's treatment for headaches and dizziness: 1) treatment at Beaumont Hospital in March, 1995 for a headache;  an analgesia was prescribed; a CT scan was normal; 2) Dr. Ho's (neurologist) opinion in May, 1995 that Plaintiff's headaches were likely stress-related; 3) treatment in March, 1997 in the emergency room (Bon Secours) for complaints of headache and vertigo; no evidence of abnormality upon examination; an EKG and CT scan were normal; noted that Plaintiff had multiple vague complaints and sometimes contradicted her own history 5)  Dr. Policherla's (neurologist) examination and diagnosis of vascular complicated headaches of June, 1997, for which Inderal was prescribed; and 6) Dr. Wetzel's (family practice) treatment in June, 1997; multiple somatic complaints noted; Plaintiff's habit of contradicting herself noted.

13

Case No. 8:13-CV-1711-T-17MAP

The Court notes that Plaintiff was seen in the Emergency Room of Bon Secours Hospital by Dr. Jennilyn Wetzel on March 26, 1997, and was seen by Dr. Wetzel at an office visit in June, 1997. (Dkt. 14-14, Ex. 16-F).  In the records of the office visit  of June 24,1997, Dr. Wetzel notes it was difficult to obtain a chronological history and establish a timeline, and Plaintiff had a habit of contradicting herself.  (Dkt. 14-14, pp. 22-27).   Plaintiff returned to the Emergency Room of Bon Secours Hospital on March 27, 1997, complaining of dizziness, for which Antivert was prescribed (Dkt. 14-11, Ex. 9-F).  At that time Plaintiff reported intermittent headaches once a month, for which Plaintiff took Tylenol, which started after Plaintiff was given epidural injections for back pain. (Dkt. 14-10, Ex. 7F, diagnosing tension headaches).   Dr. Wetzel referred Plaintiff to Dr. Policherla, a neurologist, for further evaluation.  Dr. Policherla prescribed Inderal for vascular complicated migraines.  (Dkt. 14-11, Ex. 10F).  The Court also notes that Plaintiff has described her multiple complaints, and explained why it is hard for doctors to treat Plaintiff, in correspondence to the Social Security Administration dated 3/26/12 (Dkt. 14-6, Ex. 16E).

When a claimant attempts to establish disability through her own testimony of subjective pain, the "pain standard" applies. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  The pain standard requires: 1) evidence of an underlying medical condition and 2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or 3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. The "pain standard"  applies to complaints of subjective conditions other than pain. Holt v. Sullivan, 921 F.2d 1221 (11th Cir. 1991).  When coupled with medical evidence which satisfies the pain standard, a claimant's testimony of subjective pain is, in and of itself, sufficient to sustain a disability determination. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Case No. 8:13-CV-1711-T-17MAP

The ALJ determined that medical records showed evidence of an impairment which would reasonably be expected to result in some limitation, but did not reveal evidence of medically documented objective findings consistent with the alleged severity of Plaintiff's symptoms and limitations.  In the absence of objective medical evidence which confirms the severity of Plaintiff's impairment, the ALJ was required to evaluate the intensity and persistence of Plaintiff's symptoms, in light of all available evidence, to determine how Plaintiff's symptoms limited her capacity for work, and then to determine the extent to which Plaintiff's symptoms limited Plaintiff's capacity for work. Pursuant to 20 C.F.R. Sec. 404.1529(c)(4), the ALJ properly weighed the inconsistencies in the evidence, including  the extent of conflicts between Plaintiff's testimony and the rest of the evidence.  The ALJ credited Plaintiff's testimony as to the presence of back pain, and accounted for this by reducing Plaintiff's RFC to a full range of light work.  The ALJ did not credit Plaintiff's testimony as to the severity Plaintiff's headaches and dizziness, and alleged resultant inability to engage in any work activity on a sustained basis.  The inconsistencies between Plaintiff's testimony and other evidence are obvious.

The existence of Plaintiff's headaches and dizziness is not at issue, given that at Step Two, the ALJ found these impairments to be severe. This case does not involve reliance on objective medical evidence of pain or other subjective complaints, but on the credibility of Plaintiff's testimony about the intensity and persistence of Plaintiff's symptoms, in light of inconsistencies with medical evidence and other evidence.  After consideration, the Court finds that the ALJ properly determined Plaintiff's RFC, and overrules Plaintiff's objection as to this issue.

2. Hypothetical

In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of a claimant's impairments.

15

Case No. 8:13-CV-1711-T-17MAP

<u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1227 (11th Cir. 2002).   However an ALJ is "not required to include findings in the hypothetical that the ALJ has properly rejected as unsupported."  <u>Crawford v. Commissioner of Social Security</u>, 363 F.3d 1155, 1161 (11th Cir. 2004).  The ALJ is not required to include in his hypothetical any medical conditions which are controlled by medication.   <u>McSwain v. Bowen</u>, 814 F.2d 617, 619-20 (11th Cir. 1987).

In this case, the VE classified Plaintiff's past work as "light" work.  (Dkt. 14-2, p. 67).  The VE testified as to the number of jobs of that type in the national economy, and identified other jobs in that category.   The VE further testified as to the number of jobs in the "sedentary" category in the national economy, and identified other jobs in the "sedentary" category.  (Dkt. 14-2, p. 68).  In the hypothetical posed to the VE, the ALJ asked the VE to assume that the ALJ found Plaintiff's testimony to be fully credible, the impairments alleged were supported by substantial medical evidence, that Plaintiff in fact has all the limitations described in her testimony, and asked what impact those assumptions have on jobs Plaintiff has performed in the past, and what impact those assumptions would have on Plaintiff's ability to perform a range of light work and a range of sedentary work.  The VE testified that Plaintiff's impairments would preclude Plaintiff from performing light work or sedentary work.  (Dkt. 14-2, p. 68).

In this case, the ALJ did not fully credit Plaintiff's testimony as to pain and other non-exertional limitations.  The ALJ did credit Plaintiff's testimony as to some functional limitation due to back pain, and accounted for this by reducing Plaintiff's RFC to a full range of light work.  The only testimony of the VE on which the ALJ relied was the VE's classification of Plaintiff's past work as "light" work.

The ALJ stated his RFC assessment is supported by the longitudinal medical record and the effectiveness of Plaintiff's conservative treatment, physical therapy and medication regimen.  The Court found that the ALJ properly determined Plaintiff's RFC.

16

Case No. 8:13-CV-1711-T-17MAP

The ALJ only partially credited Plaintiff's testimony as to the severity of pain and the limitations described in Plaintiff's testimony.   The ALJ determined that Plaintiff had the residual functional capacity to perform a full range of light work, and the requirements of Plaintiff's past jobs do not exceed Plaintiff's RFC for the full range of light work. Therefore, at Step Four, the ALJ found that Plaintiff can return to her past relevant work and is not disabled within the meaning of the Social Security Act and regulations.   The ALJ's "Step Five" determinations are alternative findings.

After consideration, the Court overrules Plaintiff's Objection as to this issue. Accordingly, it is

**ORDERED** that Plaintiff's Objections are **overruled,** and the Report and Recommendation (Dkt. 21) is **adopted** and **incorporated by reference.** The decision of the Commissioner is **affirmed.** The Clerk of Court shall enter a final judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff Kanella Karen Hantzis, and, and close this case.

**DONE and ORDERED** in Chambers, in Tampa, Florida on this _22nd_ day of July, 2014.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record

17